IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN NICHOLS, aka JACK NICHOLS,<br><br>     Plaintiff,<br><br>     v.<br><br>COUNTY OF SACRAMENTO, CHERYL CRESON, STEVEN PEDRETTI, KEITH FLOYD, GEORGIA COCHRAN, CARL MOSHER, THOR LUDE, HAROLD BIXLER, and JOHN HALLIMORE,<br><br>     Defendants. | 2:07-cv-02759-GEB-EFB<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT |

On December 23, 2009, Defendants filed a motion for summary judgment on all of Plaintiff's claims, or in the alternative, seek summary adjudication of Plaintiff's claims. Instead of filing an opposition, Plaintiff filed an *ex parte* motion to continue the hearing on Defendants' motion, essentially requesting an extension to file his opposition, which was granted. (See Docket No. 49-56.) Plaintiff subsequently filed his opposition to Defendants' motion on February 22 and 23, 2010. This opposition does not comply with the local rule requiring Plaintiff to include a response to Defendants' statement of undisputed facts, and contains unauthenticated exhibits and argument that does not cite facts. Plaintiff subsequently filed a request on February 26, 2010, for a 4-day extension of time to file an untimely separate statement of disputed facts, another affidavit, and Plaintiff's amended declaration. (See Docket Nos. 70-73.) Defendants countered arguing the request should be denied, but that "[i]f the

court . . . allow[ed] another late filing by Plaintiff, . . . that the court issue a further briefing schedule to permit Defendants to file a Reply brief to the new material." (Id. 1:24-26.)  Plaintiffs' second untimely filing has been considered.  Further briefing by Defendants is unnecessary since Plaintiff has failed to controvert Defendants' evidence with specific facts.

## I. BACKGROUND

### a. Plaintiff's Allegations

Plaintiff alleges four claims in his Complaint, all of which arise from termination of his employment with the County of Sacramento Building Inspection Division.  Plaintiff alleges in his first claim that Defendants County of Sacramento ("County"), Cheryl Creson ("Creson"), Steven Pedretti ("Pedretti"), and Keith Floyd ("Floyd") violated his First Amendment rights by "terminating Plaintiff's employment with the County" for "report[ing] the [D]efendants' illegal activities . . . to the Sacramento County Grand Jury, as well as to other County representatives and law enforcement officials." (Compl. ¶ 26.)  Plaintiff alleges in his second claim that Defendants County, Creson, Pedretti, and Floyd conspired to violate Plaintiff's First Amendment rights.  (Id. ¶ 32.)  Plaintiff alleges in his third claim that all Defendants knew of the conspiracy to deprive Plaintiff of his First Amendment rights and neglected to prevent deprivation of Plaintiff's rights.  (Id. ¶ 38.) Lastly, Plaintiff alleges Defendants violated California Labor Code Section 1102.5  by "retaliat[ing] [against] [P]laintiff's reporting of illegal and corrupt activities . . . ."  (Id. ¶ 44.)

### b. Summary Judgment Factual Record

"Near the end of 2003, [Pedretti], Director of the

Department of County Engineering and Administration, contacted management consultant, Pamela Hurt-Hobday ("Hobday"), to work with the Building Inspection Division to improve communication amongst the employees, and to create more collegial working environment. (Statement of Undisputed Fact ("SUF") ¶ 1.)  "As part of her work, Hobday met with and interviewed employees of all levels within Building Inspection." (Id. ¶ 2.)  "Sometime at the end of 2003 or beginning of 2004, Hobday reported to Pedretti concerns that there were various improprieties and potentially illegal activity occurring within the Division regarding relations between building inspectors and contractors and developers." (Id. ¶ 3.) "In an effort to uncover the truth, Hobday was encouraged to continue meeting with staff and conducting interviews." (Id. ¶ 4.)  "Around the same period, Plaintiff contacted [Floyd], Deputy Counsel for Sacramento County, with concerns he had related to the personnel reviews occurring in the Municipal Services Agency at that time." (Id. ¶ 5.)  "In December of 2003, [Plaintiff] went to Floyd with concerns regarding the workplace practices of then Principal Building Inspectors, Barry Hutchens ["Hutchens"] and Doug Ladd ["Ladd"], specifically related to alleged special considerations being given to contractors that might be contributors to a charitable organization run by them known as 'The Red Tag Breakfast Club.'" (Id. ¶ 6.)  Plaintiff "also informed Floyd that during this time with the Building Inspection Division he had received gifts from contractors." (Id. ¶ 7.)  "Specifically, Nichols admitted to three incidents of accepting gifts from contractors: one involved receipt of a new washing machine and dryer; another involved receipt of the cost of a vacation to Hawaii for he and his family; and the third involved the installation of a new concrete driveway at his

residence." (Id. ¶ 8.)  Plaintiff counters what he received were loans, not gifts.  (Pl's Response to SUF ¶ 8; Forncrook Aff. ¶¶ 2, 3, 4, 5; Saca Aff.  ¶¶ 2, 3, 4, Silva Aff. ¶ 3).

"On January 2, 2004, . . . Pedretti and Floyd met with Plaintiff at County Counsel's office to discuss Plaintiff's concerns relating to Hutchens and Ladd, and his receipt of gifts from contractors." (Id. ¶ 9.)  "At this time, Plaintiff revealed he had not included the received gifts in the required Statement of Economic Interest in violation of County policy." (Id. ¶ 10.) "Upon Plaintiff informing . . . Pedretti of the violations of his job duties and improprieties with various contractors, Pedretti actually encouraged Plaintiff to come forward and tell what he knew." (Id. ¶ 56.) "Although Plaintiff inquired as to the status of his employment after making the report, Pedretti could not guarantee what action would be taken in response." (Id. ¶ 11.)  "The manager of Human Resources, defendant Georgia Cochran [("Cochran")] was contacted to pursue a further investigation of the issues reported by Plaintiff."  "Upon further review, it was determined that none of the gifts Plaintiff receive[d] from contractors appeared on any Statement of Economic Interest Form."  (Id. ¶ 13.)

Further, "[i]n March 2004, Plaintiff directed a subordinate employee to issue a building permit in violation of Building Inspection Division procedures, without getting proper approvals and without collecting the required fees." (Id. ¶ 14.)  "Also in March 2004, Plaintiff directed a subordinate to issue a permit for a project in the city of Rancho Cordova without proper approval, in violation of a directive from management." (Id. ¶ 15.)

"Based on the foregoing actions of Plaintiff, [Creson],

Administrator of the Sacramento County Municipal Services Agency approved a six (6) month demotion of plaintiff from Supervising Building Inspector to Building Inspector II." (Id. ¶ 16.) "A Notice of Proposed Disciplinary Action for demotion was prepared, issued and served on Plaintiff on July 14, 2004." (Id. ¶ 17.) "An Order of Disciplinary Action for a six (6) month demotion was effective September 1, 2004." (Id. ¶ 18.) "Plaintiff does not dispute that some type of discipline was justified following his admittance of violating county policy regarding reporting gifts on his conflict of interest statement, but merely felt the discipline was too harsh." (Id. ¶ 49.) "Plaintiff appealed the discipline to the Civil Service Commission, which upheld the demotion." (Id. ¶ 19.)  As a result, [Plaintiff] was demoted to the position of Building Inspector II, and assigned to work at the Building Inspection Division office at 827 9th Street." (Id. ¶ 20.)  "Due to leave taken by Plaintiff the terms of the demotion had to be amended twice resulting in Plaintiff's demotion lasting until September 2005."  (Id. ¶ 21.)

It was later learned that "[i]n August 2004, Plaintiff [also] attempted to renew an existing permit for work at his personal residence without undergoing the proper procedure or paying the proper fees."  (Id. ¶ 22.)  "The request for renewal was submitted to the Chief Building Inspector, . . . Bixler . . . with a written note indicating that a manager in the Building Inspection Division had approved and signed off on the renewal." (Id. ¶ 23.)  "Upon further investigation, Bixler discovered that the wrong type of permit was issued for the work done, and that Plaintiff's subordinate, John Richardson, issued this improper permit in July 2003."  (Id. ¶ 24.) "The issue was reported to the Human Resources department for further

investigation." (Id. ¶ 25.) "The investigation confirmed the improper action and use of his position by Plaintiff." (Id. ¶ 26.)

"Plaintiff returned to his position as Supervising Building Inspector in September 2005" and was "provided a new duty statement which eliminated the managerial responsibilities that were previously part of the position prior to Plaintiff's demotion," but Plaintiff's position "maintained the same title, pay and benefits." (Id. ¶¶ 27-29.)

"In September 2005, Defendant Mosher started as Director of County Engineering." (Id. ¶ 30.) "After learning of Plaintiff's various transgressions and his employment history, Mosher determined that Plaintiff should be terminated from his position." (Id. ¶ 32.) Defendant Mosher made the decision to terminate Plaintiff." (Id. ¶ 46.) "Defendants Pedretti and Lude, who had been employed . . . .with the Building Inspection Division longer than Mosher, agreed that termination was the proper discipline." (Id. ¶ 33.) "Defendant Creson approved the decision to demote Plaintiff." (Id. ¶ 45.) Defendants Creson, Pedretti, Floyd, Bixler, and Hallimore did not "ha[ve] the authority, nor made the decision, to terminate Plaintiff." (Id. ¶ 47.)

"Human Resources prepared a Notice of Proposed Disciplinary Action for the dismissal of Plaintiff based upon the improper issuance and renewal of the permit for work on his residence in addition to his prior employment history." (Id. ¶ 34.) "Plaintiff was served with the Notice on November 15, 2005, and was immediately placed on administrative leave." (Id. ¶ 35.) "The Order for Disciplinary Action for dismissal was issued on January 9, 2006." (Id. ¶ 37.) "Plaintiff appealed the decision but then dismissed the appeal." (Id. ¶ 38.)

"Plaintiff claims that he was terminated as a consequence

6

for disclosing corruption to the Grand Jury." (Id. ¶ 39.) "However, [Defendants Pedretti, Mosher, Cochran, and Floyd] were not aware that Plaintiff filed a complaint with the Grand Jury or that he testified before the Grand Jury at the time that any employment decision or disciplinary action was taken." (Id. ¶ 40.) Further, Bixler and Hallimore declare they "have never been made aware of the specific content of any testimony by [Plaintiff] before the Grand Jury." (Id.; Ex. 14, 9, Ex. 15, 7.) Plaintiff counters that "Bixler was aware of the Grand Jury Testimony." (Pl's Response to SUF ¶ 40.) Plaintiff supports this assertion with a declaration from Bill McDowell ("McDowell"), a "supervising building inspector by Sacramento County from 1999 until 2006," who "worked as one of the commercial field supervisors with [Plaintiff] during that time and after [Plaintiff's] demotion." (McDowell ¶ 1.)

> McDowell declares that [p]rior to [his own] testimony before the Grand Jury, . . . Bixler asked [him] why [Plaintiff] complained to the Grand Jury. [McDowell] responded that [Plaintiff] had told [him] that he thought the managers were trying to cover up the Red Tag Scandal by silencing [Plaintiff]. Because of this question, it was apparent that . . . Bixler was already aware that [Plaintiff] had complained about this illegal activity to the Grand Jury.

(Id. ¶ 8)

Defendants object to paragraph 8 of McDowell's declaration on the grounds of relevancy, arguing that "[a]ny statements made by Mr. Bixler concerning Plaintiff's . . . the grand jury [testimony] is not relevant, as the undisputed facts establish that Bixler was not involved in the decision to terminate [Plaintiff.]" (Def's Obj. ¶ 2) Defendants' objection is overruled since Plaintiff has shown Bixler may have know of Plaintiff's testimony before the Grand Jury.

"Plaintiff admits that [he] did not inform any management employee with the County of Sacramento that he was intending to, or that he in fact did, testify before the Grand Jury prior to his termination." (Id. ¶ 41.) "Plaintiff admits that he did not tell any manager or supervisor, nor any defendant, that he was testifying before the grand jury." (Id. ¶ 50.) "Plaintiff further admits that he has no basis for his allegations that the content of his testimony before the Grand Jury was somehow told or leaked to any defendants" by Mary Ose from the Sacramento Bee; "Plaintiff's accusations that [Mary Ose] leaked information regarding his testimony to [Hobday] who then leaked it to [D]efendants is based purely on [Plaintiff's] experience and feeling without any actual evidence; he has no information to verify this belief." (Id. ¶¶ 42; 55.) "Plaintiff does not have any information that any named defendant knows what he testified to before the Grand Jury." (Id. ¶ 61.)

"In October 2005 . . . Mosher . . . testified before the Grand Jury as part of a presentation regarding the operations of Building Inspection Division as part of an investigation instigated by the Grand Jury" and "[a]t no time . . . bec[a]me aware that any employees were called to testify before the Grand Jury as witnesses." (Id. ¶¶ 43-44.) Further, "Plaintiff has no information that any Sacramento County employee who testified before the Grand Jury was terminated thereafter." (Id. ¶ 62.)

"Plaintiff's only basis for his claim that Cheryl Creson intimidated and coerced witnesses not to testify before the grand jury was that she was the director and was in charge." (Id. ¶ 59.) "Plaintiff admits that although he believes all the defendants were involved in the decision to demote him, he doesn't 'really have any

8

proof of that.'" (Id. ¶ 58.)  Plaintiff's only basis for asserting that any of the defendants intimidated and coerced witnesses from testifying before the grand jury is by virtue of their positions in the County." (Id. ¶ 60.)

"At no time did [Defendants Creson, Pedretti, Floyd, Cochran, Bixler, [or] Hallimore] conspire with any County of Sacramento employee, or any other of the defendants, to demote or terminate Plaintiff." (Id. ¶ 48.)  "Plaintiff's sole basis for believing the[re] was a conspiracy to have him terminated is an email from . . . Cochran instructing various management employees in the Municipal Services Agency not to respond to an email from Plaintiff, but to instead allow one individual to handle any response." (Id. ¶ 57.)

## II.  LEGAL STANDARDS

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Thus, the party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S., 317, 323 (1986). If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis omitted).  Summary judgment is properly granted "against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

Defendants request that the Court take judicial notice of a complaint Plaintiff filed in the Superior Court of California against the County, Pedretti, and Does 1 through 50, on June 9, 2006, ("State Complaint"). Since Defendants have not shown how the State Complaint is relevant to this action, this request is denied. Defendants also request that judicial notice be taken of Plaintiff's request for dismissal of the State Complaint on November 9, 2007 ("Plaintiff's Request for Dismissal"). However, Defendants failed to attach the Plaintiffs' Request for Dismissal to their motion. Therefore, this request is also denied.

### III. ANALYSIS

Defendants Creson, Pedretti, and Floyd seek summary judgment on Plaintiff's First Amendment claim arguing they did not make the "decision, nor had the authority, to terminate Plaintiff." (Mot. 8:23-9:8; Reply 3:8-14.) Further, the County seeks summary judgment on Plaintiff's First Amendment claim because arguing that Mosher, the County employee responsible for Plaintiff's termination, terminated Plaintiff for the "legitimate business reasons, [of] not the reporting . . . allegedly illegal activity." (Mot. 6:28-8:22; 11:17-20; Reply 4:24-8:3.)

For Plaintiff to establish a First Amendment retaliation claim, Plaintiff must show:

> (1) [he] spoke on a matter of public concern;
> (2)[he] spoke as a private citizen . . . ; (3) ***[his] protected speech was a substantial or motivating factor in the adverse employment action;***

10

```
            (4) . . . the state had an adequate justification
            for treating the employee differently from other
            members of the general public; and (5) . . . the
            state would have taken the adverse employment
            action even absent the protected speech.
```

Huppert v. City of Pittsburg, 574 F.3d 696, 702 (9th Cir. 2009)(citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)).

Even assuming, *arguendo*, that Plaintiff's testimony before the Grand Jury satisfies the first two prongs of the above analysis for protected speech, Plaintiff has failed to controvert Defendants' evidence with specific facts showing that a genuine issue of material fact exists on the issue whether Plaintiff's "protected speech was a substantial or motivating factor in [his termination]." Id.

Defendants uncontroverted evidence shows that Defendants Creson, Pedretti, and Floyd did not "ma[k]e the decision, to terminate Plaintiff.'" (SUF ¶ 47). Further, "Plaintiff admits that although he believes all the defendants were involved in the decision to demote him, he doesn't 'really have any proof of that.'" (Id. ¶ 58.) Therefore, Defendants Creson, Pedretti, and Floyd's motion for summary judgment is granted on Plaintiff's First Amendment retaliation claim.

The County's exposure to liability on Plaintiff's First Amendment retaliation claim depends on whether Mosher made an unlawful decision to terminate Plaintiff. Plaintiff does not dispute that "[a]t the time [Mosher] issued the Proposed Order of Disciplinary Action for Dismissal on November 9, 2005, [Mosher] had no knowledge that [Plaintiff] filed a complaint with, or testified before, the Grand Jury." (Id. ¶ 40, Ex. 12, ¶ 13).

Moreover, Plaintiff admits "[he] did not inform any

11

management employee with the County of Sacramento," "supervisor, nor any defendant, that he was testifying before the [G]rand [J]ury." (Id. ¶¶ 41, 50.) "Plaintiff further admits that he has no basis for his allegations that the content of his testimony before the Grand Jury was somehow told or leaked to any defendants." (Id. ¶¶ 42; 55.) "Plaintiff does not have any information that any named defendant knows what he testified to before the Grand Jury," other than what he says about McDowell being aware of some issues. (Id. ¶ 61.) Plaintiff also concedes that his "only basis for asserting that any of the defendants intimidated and coerced witnesses from testifying before the grand jury is by virtue of their positions in the County." (Id. ¶ 60.) "Plaintiff admits that although he believes all the defendants were involved in the decision to demote him, he doesn't 'really have any proof of that.'" (Id. ¶ 58.)

Since Plaintiff has failed to introduce any evidence that his protected speech was a substantial motivating factor in any adverse employment action he allegedly experienced, Defendant County's motion for summary judgment is granted on Plaintiff's First Amendment retaliation claim. See Nelson v. Pima Community College, 83 F.3d 1075, 1080 (9th Cir. 1996) (affirming an order of a summary judgment for the defendant on a wrongful retaliation claim where the plaintiff submitted evidence that she had engaged in protected speech and that she was subsequently told not to come back to work but did not introduce any evidence of a link between the two events); Thomas v. Douglas, 877 F.2d 1428, 1433-34 (9th Cir. 1989) (affirming an order of a summary judgment for the defendant on a wrongful retaliation claim because the claimant failed to offer evidence that his protected

speech was a substantial motivating factor in his employer's refusal of his request for a transfer).

Further, Plaintiff's claim against Defendants Creson, Pedretti, Floyd, and the County for conspiracy to violate Plaintiff's civil rights and Plaintiff's claim against all Defendants for neglect to prevent violation of Plaintiff's civil rights fail, since Plaintiff's First Amendment retaliation claim upon which these claims depend, fails.  Therefore, Defendants are also granted summary judgment on Plaintiff's second and third claims.

Defendants Creson, Pedretti, Floyd, and the County also seek summary judgment on Plaintiff's California Labor Code claim, arguing that Plaintiff cannot prove all the elements of this claim.  (Mot. 18:18-20:15.)  Plaintiff alleges that Defendants Creson, Pedretti, Floyd, and the County violated California Labor Code section 1102.5 ("Section 1102.5") by terminating Plaintiff in retaliation for "[P]laintiff's reporting of illegal and corrupt activities within the [County's] Municipal Services Agency." (Compl. ¶¶ 43-47.)

> To establish a prima facie case for retaliation under Section 1102.5, an employee must show (1) that he engaged in protected activity, (2) that he was thereafter subjected to an adverse employment action by his employer, and (3) ***that there was a causal link between the protected activity and the adverse employment action.***

Love v. Motion. Indus., 309 F.Supp. 2d 1128, 1134 (N.D. Cal. 2004)(emphasis added) (citing Morgan v. Regents of University of California, 88 Cal.App.4th 52, 69 (2000)).  Since Plaintiff has failed to controvert Defendants' evidence showing that no causal link exists between Plaintiff's protected speech and Plaintiff's termination, Defendants Creson, Pedretti, Floyd, and the County's motion for

summary judgment on Plaintiff's California Labor Code claim is granted.

### IV.  CONCLUSION

For the stated reasons, Defendants' summary judgment motion is granted.  Judgment shall be entered for Defendants, and this action shall be closed.

Dated: May 3, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge